RENDERED:  JULY 2, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0953-MR

HOPKINS COUNTY, KENTUCKY                                   APPELLANT

APPEAL FROM HOPKINS CIRCUIT COURT
v.          HONORABLE CHRISTOPHER B. OGLESBY, JUDGE
ACTION NO. 25-CI-00367

JACOB ADAMS; KENTUCKY FARM
BUREAU MUTUAL INSURANCE
COMPANY; AND MADISON
ADAMS                                                          APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND MCNEILL, JUDGES.

MCNEILL, JUDGE:  Hopkins County appeals from the Hopkins Circuit Court's

denial of its motion to dismiss based upon sovereign immunity.  Because we hold

that Hopkins County's participation in the Kentucky Association of Counties All

Lines Trust Fund ("KALF") does not constitute a limited waiver of its sovereign

immunity under KRS[1] 67.180, we reverse and remand for the circuit court to dismiss the complaint against Hopkins County with prejudice.

## BACKGROUND

Jacob Adams ("Adams"), an employee of Hopkins County, was injured in a motor vehicle accident while operating a Hopkins County vehicle in the scope of his employment. He subsequently filed a complaint in Hopkins Circuit Court seeking uninsured motorist benefits from his own insurance provider, Kentucky Farm Bureau Mutual Insurance Company, and the county's insurance provider, KALF.[2] The complaint also named Hopkins County as a party, because KALF "provides uninsured motorist coverage to Hopkins County, Kentucky, which is the primary insurance in this matter."

Hopkins County moved to dismiss the complaint, asserting its sovereign immunity. Adams responded that Hopkins County had waived its immunity to the limited extent allowed by KRS 67.180 by purchasing insurance, citing *Independence Bank v. Welch*, 636 S.W.3d 528, 530 (Ky. 2021). According to Adams, the statute "allows a suit to be maintained against the county for the sole

---

[1] Kentucky Revised Statutes.

[2] Adams' complaint incorrectly named the Kentucky Association of Counties, Inc., ("KACo"), a non-profit organized under the authority of KRS 65.210 *et seq*., the Interlocal Cooperation Act. KACo operates the Kentucky All Lines Trust Fund. At the hearing on the motion to dismiss, Hopkins County represented that it would not oppose Adams amending his complaint to add KALF, the insurance entity, as a party.

purpose of collecting the insurance that the county maintains for the benefit of its employees." Following a hearing, the circuit court denied the motion to dismiss, and this interlocutory appeal followed.

## STANDARD OF REVIEW

The issue of whether Hopkins County has waived its sovereign immunity requires us to interpret KRS 67.180. "Statutory interpretation is a question of law, which we review de novo." *Welch*, 636 S.W.3d at 531.

## ANALYSIS

"The waiver of sovereign immunity is exclusively a legislative matter." *Welch*, 636 S.W.3d at 532 (citing *Withers v. Univ. of Ky.*, 939 S.W.2d 340, 344 (Ky. 1997)). Kentucky courts "will find waiver only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Withers*, 939 S.W.2d at 346 (internal quotation marks and citation omitted). KRS 67.180(1) permits Kentucky counties, in their discretion, and for the "protection of the public and its employees" to "purchase policies of insurance of all kinds deemed advisable, covering vehicles operated by the county, and compensation insurance covering employees of the county receiving injuries arising out of and in the course of employment." KRS 67.180(2) goes on to provide that

> Suits instituted on such policies may be maintained against the county only for the purpose of obtaining a

judgment which when final shall measure the liability of the insurance carrier to the injured party for whose benefit the insurance policy was issued, but not to be enforced or collectible against the county or fiscal court or the members thereof.

Kentucky courts have interpreted subsection (2) as "provid[ing] an express, but limited, waiver of sovereign immunity because it permits suits against the county but only to obtain a judgment to measure the liability of the insurance carrier to the injured party." *Welch*, 636 S.W.3d at 532; *see also Monroe Cnty. v. Rouse*, 274 S.W.2d 477, 478 (Ky. 1954) (recognizing that KRS 67.180(2) modified the common law rule of sovereign immunity by authorizing a suit against the county for the sole purpose of measuring the liability of the county's insurance provider); *Ginter v. Montgomery Cnty.*, 327 S.W.2d 98, 100 (Ky. 1959) (holding that "[S]ubsection (2) of KRS 67.180 clearly recognizes the immunity doctrine in providing that a suit on such a policy is maintainable against the county only for the purpose of obtaining a judgment which shall measure the liability of the insurance carrier, and shall not be enforced or collectible against the county or the fiscal court."). Our Supreme Court has held that "[t]he legislative intent [of KRS 67.180] is clear . . . that a waiver of sovereign immunity is limited to the narrow circumstances where the county has purchased an insurance policy, in which case suit can be instituted on that policy." *Welch*, 636 S.W.3d at 533–34.

Hopkins County argues that its participation in KALF (a self-insurance fund) does not waive its sovereign immunity, citing *Welch*. In *Welch*, our Supreme Court considered whether a county's maintenance of a self-insurance policy waives its immunity under KRS 67.180. The Court held that "purchase policies of insurance" is an "operative phrase" in the statute and looked to the definitions of "insurance" and "self-insurance," noting that with self-insurance, unlike other forms of insurance, there is no contract with an insurance company. *Id.* at 534 (citing BLACK'S LAW DICTIONARY (11th ed. 2019)). Another factor distinguishing self-insurance from insurance, as identified by the Court, is the lack of risk shifting in self-insurance. Finally, the Court observed that "KRS 67.180(1) authorizes the fiscal court to '**purchase** policies of insurance of all kinds' and LFUCG's self-insurance policy was not purchased[,] . . . [r]ather, the self-insurance policy and fund were created by LFUCG." *Id.*

Considering these differences and the statute's operative language, the Court concluded that

> A self-insurance policy cannot be squared with KRS 67.180(2) because (1) a suit instituted on a county insurance policy must be "only for the purpose of obtaining a judgment which when final shall measure the liability of the insurance carrier" and (2) any judgment under the subsection shall "not be enforced or collectible against the county . . . ." Self-insurance does not involve an "insurance carrier." Thus, the necessary criteria for the limited waiver cannot be met in a suit "instituted on" a county's individual self-insurance policy, a policy that

was never purchased and that leaves all risk on the county, or in this case LFUCG.

*Id.*

Hopkins County claims that *Welch* is dispositive. Like in *Welch*, it also did not "purchase" insurance, but participated in a self-insurance fund, KALF. It further cites *Franklin County v. Malone*, 957 S.W.2d 195 (Ky. 1997), *overruled on other grounds by Commonwealth v. Harris*, 59 S.W.3d 896 (Ky. 2001), *overruled on other grounds by Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001), which specifically held that a county's participation in KALF "does not give rise to an implied waiver of sovereign immunity." *Malone*, 957 S.W.2d at 203. Importantly, *Malone* addressed implied waiver, not express waiver under KRS 67.180. But it is still instructive.

In considering whether a county's participation in KALF amounted to an implied waiver of its sovereign immunity, the Court distinguished KALF from traditional insurance:

> Franklin County does not have what is generally considered to be commercial insurance. The county participates in a trust, the Kentucky All Lines Fund, sponsored by the Kentucky Association of Counties. Counties have associated to self-insure pursuant to KRS 65.150(3) under the authority of KRS 65.210 *et seq.*, the Inter-local Cooperation Act. There is clearly a difference between a fund of money contributed to by local governments and held in trust for the indemnification of the participating members, officers and employees from the purchase of commercial liability insurance coverage.

*Malone*, 957 S.W.2d at 204.

Having considered *Welch* and *Malone*, and the plain language of KRS 67.180, we hold that Hopkins County's participation in KALF does not constitute a limited waiver of sovereign immunity under KRS 67.180. Certainly, Hopkins County's participation in KALF is closer to traditional insurance than the self-insurance fund in *Welch*—here, there is a contract, and KALF resembles an insurance company. But, as recognized in *Malone*, "[t]here is clearly a difference between a fund of money contributed to by local governments and held in trust for the indemnification of the participating members, officers and employees from the purchase of commercial liability insurance coverage." *Id.* at 204.

Applying the analysis in *Welch*, Hopkins County's participation in KALF does not meet the necessary criteria for limited waiver under KRS 67.180. The statute allows a lawsuit against a county only to "measure the liability of the insurance carrier" and requires that any judgment "not to be enforced or collectible against the county[.]" However, KALF is not an insurance carrier. It is a "self-insurance trust . . . authorized pursuant to KRS 65.150(3) under the authority of KRS 65.210 *et seq.*, the Inter-local Cooperation Act." *Board of Trustees of Kentucky School Boards Insurance Tr. v. Pope*, 528 S.W.3d 901, 907 n.5 (Ky. 2017). Further, because KALF is a self-insurance trust, all risk remains with Hopkins County and other participating counties. *See Welch*, 636 S.W.3d at 534

-7-

(citation omitted) ("[T]he shifting of risk from one party to another [is] a necessary component of an insurance contract[.]"

Finally, Hopkins County did not "purchase" an insurance policy. It contributed funds to a self-insurance trust. There is a meaningful distinction between paying insurance premiums and paying funds to a self-insurance trust, as noted in *Malone*:

> It could be argued that when a local government pays a premium to a commercial insurance company, that public funds have been expended. It may be appropriate to exempt commercial insurance companies from the protection of sovereign immunity and require such companies to pay a proper claim. However, in a self-insurance group, the funds have not been expended until a claim is made and such funds could be used to reduce contributions or make refunds in the following years.

957 S.W.2d at 204.

While we hold that Hopkins County did not waive its immunity from suit, presumably Adams could still recover uninsured motorist benefits under the KALF policy, as he was driving a Hopkins County vehicle within the scope of his employment.[3] As for the issue on appeal, however, we hold that the circuit court erred in finding that Hopkins County waived its sovereign immunity.

---

[3] We say "presumably" because the KALF policy is not part of the record on appeal. We would also note that because Adams' claim is as an intended beneficiary of the uninsured motorist coverage provided by KALF for Hopkins County employees, Hopkins County would not appear to be a necessary party. Indeed, Hopkins County has indicated that Adams' claim against KALF could proceed in its absence. At the hearing on the motion to dismiss, Hopkins County observed that Adams had incorrectly sued the Kentucky Association of Counties, Inc. instead of the

# CONCLUSION

Accordingly, the order of the Hopkins Circuit Court is reversed, and this matter is remanded with instructions to dismiss the complaint against Hopkins County with prejudice.

ALL CONCUR.

BRIEF FOR APPELLANT:

Harold Mac Johns
Elkton, Kentucky

John A. Sowell
Bowling Green, Kentucky

BRIEF FOR APPELLEE:

Natasha Camenisch Little
Marcus R. Little
Madisonville, Kentucky

---

insurance provider, KALF, and that it would not oppose Adams amending his complaint to add the correct party.